**United States District Court**
Western District of Virginia
Harrisonburg Division

|  |  |  |
|---|---|---|
| **CAROL E. ROOT**, | ) ) ) ) | Civil No.: 5:12cv00103 |
| *Plaintiff*, | ) ) |  |
| v. | ) ) | **REPORT AND RECOMMENDATION** |
| **CAROLYN W. COLVIN**, [1] Commissioner of the Social Security Administration | ) ) ) ) ) |  |
|  | ) | By: Hon. James G. Welsh |
| *Defendant* | ) ) | U. S. Magistrate Judge |

Carol E. Root brings this civil action challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416(i) and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

### I. ADMINISTRATIVE AND PROCEDURAL HISTORY

Claiming disability due to "blood clot, right hip, bone spurs, swelling in ankle and problems with left hand," on June 9, 2009 Ms. Root filed her current claim for DIB alleging a period of disability starting on May 31, 2003. [2] (R. 16, 215-218, 238) This current claim was denied initially on September 23, 2009. (R. 16, 89-97) On February 19, 2010 it was denied on

---
[1] Carolyn W. Colvin succeeded Michael Astrue as the Acting Commissioner of Social Security on February 14, 2013 while this action was pending in this Court. Fed.R.Civ.P. 25(d).

[2] This alleged disability onset date is one day after the date of the adverse administrative decision on Ms. Root's previous DIB application.

reconsideration (R. 16, 98-107), and following an October 19, 2010 administrative hearing by written decision of an administrative law judge ("ALJ") dated January 28, 2011 it was denied for a third time. (R. 16-30, 35-88) With the Appeals Council's subsequent denial of her review request (R. 1–3), the unfavorable ALJ decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Along with her Answer (docket #8) to the plaintiff's Complaint (docket #3), the Commissioner has filed a certified copy of the Administrative Record ("R.") (Docket #10), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. Each party has moved for summary judgment (docket #13 and #15) and filed a supporting memorandum of points and authorities (docket #14 and #16). Oral argument was conducted on August 5, 2013 with plaintiff's attorney appearing in person and defendant's attorney appearing telephonically (docket #18). By standing order this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II.  ALJ's FINDINGS

In his written decision, the ALJ made his findings and conclusions pursuant to the agency's five-step decisional process. He first determined that Ms. Root's insured status for DIB benefits expired December 31, 2008. (R. 18) Although the plaintiff had had engaged in work activity after her alleged disability onset date of May 31, 2003, the ALJ determined that this work likely did not meet the level of work activity necessary to constitute substantial gainful activity as defined in 20 CFR § 404.1572.[3] (*Id.*) Consistent therewith and on the basis

---

[3] In making this determination, the ALJ relied on portions of the record that indicated Ms. Root had cared for her sister's two young children between August 2000 through June 2004, worked between September 2005 through December 2005 at Hollister, and lastly from December 2005 through March 2006 at Adecco. The vocational expert classified child-care as requiring a light-medium level of exertion, the Hollister job as exertionally sedentary, and the Adecco job as requiring a light level of exertion.

2

of a review of the entire administrative record, the ALJ next determined that none of the plaintiff's medically determinable conditions (chronic venous insufficiency, obesity, and osteoarthritis), either singularly or in combination was a *severe* [4] impairment within the meaning of the Act. (R. 19-27) Nevertheless, the ALJ elected to proceed for the sake of argument and to insure a full record for review with the remainder of the agency's sequential analysis. Based on this assumption *arguendo* and based on his further assessment of the record, the ALJ next concluded that that the plaintiff's impairments neither met nor medically equaled any of the impairments listed in 20 CFR part 404, subpart P, appendix 1. [5] (R. 27) Proceeding on the assumption that the plaintiff's impairments were *severe*, giving the plaintiff "the benefit of the doubt regarding limitations caused by her impairments" and consistent with the vocational evidence, the ALJ further determined that Ms. Root retained the functional capacity necessary to perform work, at a light level of exertion and retained residual functional ability to perform her past relevant assembly, inspection and quality assurance jobs. *See* 20 C.F.R. § 404.1567(b). (R. 28-30; *see also* R.84-85)

### III. SUMMARY AND RECOMMENDATION

Based on a thorough review of the administrative record and for the reasons herein set forth, it is **RECOMMENDED** that the plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, an appropriate final

---

[4] A *severe* impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

[5] As noted by the ALJ in his decision, by counsel, the plaintiff contended that her condition "met or medically equaled the requirements of section 4.11" of the listings. (R. 27)

judgment be entered **AFFIRMING** the Commissioner's decision denying a period of DIB benefits, and this matter be **DISMISSED** from the court's active docket.

## IV. STANDARD OF REVIEW

The court's review in this case is limited to determining whether the factual findings of the Commissioner are supported by substantial evidence and whether they were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642). The court is "not at liberty to re-weigh the evidence … or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted).

## V. THE ADMINISTRATIVE RECORD

*Age, Education and Vocational Experience*

Ms. Root was born in 1958, and she obtained a high school (or high school equivalent) education. (R.42, 44, 59, 111, 119) She worked as a quality assurance technician from 1978 until 2000. (R. 44-45, 83, 239) This work was described by the vocational witness as exertionally light and semi-skilled. (R.83) She worked as a food inspector during portions of 2001- 2002 (R. 59-60, 83, 239); this work was also exertionally light and semi-skilled (R. 83-84). From 2000 until 2004 she took care of her sister's two young children (R. 18, 60-61); this activity was described by the vocational witness as exertionally medium and "at the low end of

4

semi-skilled." (R. 84)   Her last full time employment began September 2005 as a temporary factory assembler and ended two months later, when she fell while on the job and injured her wrist. (R. 62-63, 83, 239)   She was terminated from this sedentary and unskilled job one month later due to low efficiency.  (R. 18, 63, 83)   She was then placed in a temporary make-work clerical position between December 2005 and March 2006 by the "worker's comp people," which in the opinion of the vocational witness was "not a real job." (R.18, 82)

### *Prior Title II Application in 2002 and Related Treatment History*

In March 2002 the plaintiff filed her first DIB application and claimed therein to be disabled as of January 30, 2002 due to chronic venous insufficiency, swelling in her legs, and bad nerves. (R.111)  Her claim was ultimately denied by written ALJ decision dated May 30, 2003. (R.111-122)  The medical record considered by the ALJ in connection with this decision included a history of varicose veins, obesity, depression and anxiety (controlled with medication), and right foot and ankle swelling and discomfort for which no surgical intervention was medically indicated.  (R. 113-115, 117, 313-318, 325-329, 466-471, 485-490) Concluding that the plaintiff was not disabled, the ALJ then found that the plaintiff retained the residual functional capacity to perform a range of sedentary work with a sit/stand option, [6] limited access to heights, and the ability to elevate her legs periodically.  (R. 118-121)

### *Medical History During the Decisionally Relevant Period* [7]

*Inter alia*, Ms. Root's records document her receipt of treatment by several health care providers for several transient medical problems, including bronchitis, a superficial skin

---

[6]   The opportunity to change positions during the performance of work activity is typically described as the "sit/stand option" or "sit/stand limitation."  *See Gibson v. Heckler*, 762 F.2$^d$ 1516, 1518 (11th Cir. 1985).

[7]   The plaintiff seeks DIB beginning 5/31/2003; her insured states expired on 12/31/2008.

5

infection, sore throat, post-nasal drip, and irregular menses. (R. 405-407, 446, 464, 517-518) During this period, she was also seen and treated for three minor physical injuries. Over an eleven-week period in 2005-2006, she received treatment for a work-related left thumb/wrist injury sustained on November 1, 2005. (R. 334-344, 349-362, 365-369, 371-395, 403, 509-515) This injury was treated conservatively with Motrin and a carpal metacarpal ("CMC") injection, and on January 16, 2006 she was discharged with the notation "[n]o further treatment indicated." (R. 334-343, 510) In April 2006 she was treated for a work-related knee injury, which also required only conservative treatment. (R. 408, 452-453, 493) And in June 2008 she was treated for a right toe laceration that healed without any complications. (R. 414, 492)

In addition to receiving treatment for these transient medical issues, Ms. Root was also treated during the decisionally relevant period for several more persistent medical issues, including complaints of hand pain, right ankle pain and swelling, anxiety, and obesity. On July 23, 2003, for example, she presented at Augusta Family Practice with complaints of "some agitation and anxiety, … chronic edema of the right lower extremity, … [and] pain in her feet and lower legs." (R. 312) On examination the skin edema was found to be "mild;" she was given Ultram and ibuprofen for her pain-related complaints, an anti-anxiety medication was prescribed, and she was "encouraged" to continue wearing compression hose. (R.312)

Pursuant to a dermatology referral, principally for an assessment of her right lower leg complaints and associated problems, the plaintiff was seen the following day by Keith Knoell, M.D. (R. 318) Based on his clinical examination and evaluation, Dr. Knoell found the plaintiff to be well-developed, well-nourished, and in no apparent distress; he noted that Ms. Root exhibited only "minimal skin changes," which he described as "mostly manifest by [varicose veins]," with "a slight degree" of leg swelling (greater on the right lower leg) of the type

6

"typically" associated with this venous condition. (R. 318) In Dr. Knoell's opinion no follow-up appointment was medically indicated unless the plaintiff's skin condition changed; he stressed to her the importance of compression stockings, and he advised her to follow the treatment suggested by her primary care provider. (*Id.*)

Four months later, in November 2003, the plaintiff sought treatment from her primary care provider for arm pain, for ankle pain that she attributed to prolonged standing, and for "occasional anxiety symptoms" that she reported were relieved with use of a low dose (.05 mg) prescription of Atavan. (R.310) For her other medical complaints, a non-prescription pain reliever and a tennis elbow band were the only treatment suggestions at that time. (*Id*.) In June-July 2004 she also received outpatient physical therapy, which she found to be "very helpful." (R. 519-522)

During the remainder of the decisionally relevant period, the plaintiff's medical records document her ongoing receipt of pharmacologic treatment through various primary care providers for her "occasional anxiety," for unexplained bleeding episodes, and for diffuse hand and lower extremity pain. (R. 334, 440-443, 457-458, 463) Likewise, these records document repeated medical recommendations that the plaintiff pursue a health and well-being regime, which should include weight loss and the use of compression stockings for her right leg vascular disease, ankle swelling, and related discomfort. (R. 310-313, 326, 429-430, 443, 445-446, 447, 457, 459, 491)

In November 2005 an MRI study of the plaintiff's left (non-dominant) hand demonstrated arthritic changes at the basal joint; however, an attendant clinical examination demonstrated her range-of-motion to be "within functional and normal limits" and that no further treatment was medically indicated as of January 16, 2006. (R. 334-335) Similarly,

despite her persistent complaints of diffuse hand pain, "provocative maneuvers" and a carpometacarpal ("CMC") grind test by an orthopedist at University of Virginia Medical Center ("UVaMC") in June 2006 failed to demonstrate any atrophy, any functional abnormality of the thumb, or any ulner-sided wrist pain. (R.350)

Fifteen months later, when she was seen and treated at Stuarts Draft Family Practice, the plaintiff was noted to have only "trace" leg swelling bilaterally (greater on the left). (R. 450) At that time, she related that she had been experiencing this condition "for over a year," but nevertheless retained "generally good exercise tolerance when she walks," and she also reported that compression hose "caused a rash" and "did not work well." (*Id.*) On examination, her strength, sensation and gait were all noted to be normal; lasix was prescribed for fluid retention, and she was advised to diet and walk for exercise. (*Id.*) One month later, the swelling was "completely resolved;" she exhibited no swelling in her ankles and feet, and she was again instructed to walk for exercise. (R.447)

### *Medical Treatment After Expiration of Insured Status*

After a lapse of more than one year, the plaintiff returned to her primary care provider in March 2009, three months after her insured status had expired. (R.445) At that time she complained of lower extremity pain and discomfort; she was given an anticoagulant injection for her lower extremity blood clots, and a follow-up injection was administered the following day at Augusta Medical Center ("AMC"). (R.445, 420-422) Other than her complaints of right leg and thigh pain, at that time Ms. Root reported that she had no other medical complaints and was taking no medication except aspirin daily. (R.418) On examination, she was found to be in no acute distress, to be appropriate in appearance, to exhibit a reddish skin rash on her right

8

thigh, and to have extensive right lower extremity blood clots that were treated with an anticoagulant. (R.416, 418, 420)

## VI. DISCUSSION OF ISSUES

### A.

Before discussing the specific issues raised by the plaintiff on appeal, it merits noting at the outset that medical treatment records and evaluations made after a claimant's insured status has expired are not automatically barred from consideration, because they may be relevant to prove a disability arising before a claimant's last insured date. *Bird v. Comm'r of SSA*, 699 F.3$^d$ 337, 340 (4th Cir. 2012) (citing *Moore v. Finch*, 418 F.2$^d$ 1224, 1226 (4th Cir. 1969)). In the instant case, however, the plaintiff's medical records dated since her insured status expired fail to demonstrate that the plaintiff had a disabling medical condition before her insured status expired. This retrospective consideration, includes a review of numerous imaging studies (R. 562-565, 569, 585-587, 591-593, 598-599, 606-621, 642-653, 663-668), the results of multiple laboratory studies (R. 588, 597, 622-630, 633-637, 660-662), miscellaneous AMC emergency room records (R. 571-578), several Stuarts Draft Family Practice treatment notes dated in July 2009 (R.559-561) and the treatment notes of Dr. Theresa Miller which begin with the plaintiff's initial office visit on August 13, 2009 (R. 647-659). At most, these records show only that the plaintiff's medical condition continued to include obesity, some degenerative changes to the right knee, a history of right lower extremity deep venous thrombosis without any later evidence of same, and a variety of chronic pain complaints. (*E.g.*, R. 560-566, 585, 642, 656, 658, 666-668)

### B.

The plaintiff's principal argument on appeal is that the record lacks a substantial evidentiary basis for the ALJ's conclusion that her identified impairments were not *severe*. (Docket #14, pp 7-10) To demonstrate this alleged error, she points to the July 7, 2010 opinion of Dr. Theresa Miller, that the plaintiff's lower extremity condition was functionally disabling (R. 672-675) and to Dr. Miller's later conclusory opinion that this condition was of listing-level severity (R. 670).

This contention is contrary to the weight of the evidence. Given the fact that Dr. Miller (as she expressly acknowledged) neither saw nor treated the plaintiff until seven and one-half months after the plaintiff's insured status had expired. (R. 658, 672) and given the fact that the plaintiff's deep vein thrombosis did not arise until two and one-half months after expiration of her insured status (R. 27, 49-50, 416-420), it was more than appropriate for the ALJ to have "afforded no weight" to Dr. Miller's opinions. In addition, as the ALJ noted in his decision, Dr. Miller's opinions were based on medical treatment that began after expiration of the plaintiff's insured status, and as he further noted Dr. Miller's opinions were inconsistent with other substantial evidence in the record, including *inter alia* the treatment record during the relevant period and the assessments of the state agency medical reviewers. Thus, contrary to the plaintiff's contention significant evidence in the record supports the ALJ's determination that Dr. Miller's opinion should be "afforded no weight." (R.27-28)

It is axiomatic that a treating physician's opinion must be afforded controlling weight only if: (1) it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques; and, (2) is not inconsistent with other substantial evidence in the record. *Craig v. Chatter*, 76 F.3$^d$ 585, 590 (4th Cir. 1996); 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, Therefore, an ALJ is not decisionally obligated to accept opinions from a treating physician in every

situation. When the physician's opinion is inconsistent with other evidence or when it is not otherwise well supported, the ALJ is entitled to weigh the evidence pursuant multiple factors, including the fact that the opinion in the instant case post-dates the plaintiff's date last insured. *See Jarrells v. Barnhart*, 103 Soc. Sec. Rep. Service 854, ___ ( WDVa. 2005) ("Although 20 C.F.R. § 404.1527 dictates that the opinions of a treating physician are generally entitled to more weight than those of a non-treating physician, the regulations do not require the ALJ to accept such opinions in every situation."); *Blake v. Comm'r, SSA*, 2013 U.S. Dist. LEXIS 109723, *5 (DMd. Aug. 5, 2013) ("The ALJ properly assigned no weight to [a medical] opinion … , because the dates considered in that opinion post-dated [the plaintiff's] date last insured.") *Id.*

## C.

Ms. Root next argues that the ALJ's determination that she has the residual functional capacity ("RFC") through her date last insured "to perform at least light work as defined in 20 C.F.R. § 404.1567(b) that involves no climbing ladders, ropes or scaffolds, and involves no unprotected heights" (R. 28) is not supported by substantial evidence (docket # 14 pp 9-10). On its face, this contention is meritless, given Ms. Root's failure to establish a *severe* impairment at step two of the sequential decisional process, and his decision to continue his sequential evaluation *arguendo* only by giving the plaintiff "the benefit of the doubt." (R 27).

Given the plaintiff's reliance on Dr. Miller's opinion to support this argument, it is also fatally flawed. The ALJ is solely responsible for determining her RFC, and he is not required to accept an opinion of a treating physician when it speaks to an issue reserved for the Commissioner. 20 C.F.R. § 404.1546(c)-(e), Additionally, this argument fails to recognize or even acknowledge that the ALJ gave the plaintiff the further benefit of the doubt as to her

limitations caused by her impairments (obesity, chronic venous insufficiency and osteoarthritis) as part of his consideration of her functional limitations and restrictions resulting from her medically determinable impairments [8] (R.27-29).  SSR 96.8p.

### D.

Lastly, the plaintiff's claim that the ALJ should have had her seen for a consultive examiner and had a medical expert present at the hearing to address the issues of impairment severity and onset date (docket #14, p 9-10).  Although an ALJ has an affirmative duty to develop further the medical record, "when the evidence is inadequate" to make a disability determination, *Cook v. Heckler*, 783 F.2$^d$ 1168, 1173 (4th Cir. 1986), where, he "ha[s] before him sufficient facts to determine the central issue of disability," no such requirement exists. *Scarberry v. Chater*, 1995 U.S. App. LEXIS 9456, *14, n. 13) (4th Cir. Apr. 25, 1995).  Given that the plaintiff in the instant case was represented by counsel at the hearing (R. 37), given that no suggestion was made at the hearing concerning a need to withhold a disability determination pending a further development of the record (R. 86) and given that there has been no identification of any specific evidence concerning her medical condition which would suggest a different disability determination by the ALJ prior to the plaintiff's date last insured, these failures are fatal to the plaintiff's argument that the ALJ violated her duty to develop the record. *See Newton v. Apfel*, 209 F.3$^d$ d 448, 458 (5th Cir. 2000) (claimant's burden to show that additional evidence would have been produced that might have led to a different decision) (cited with approval in *Camp v. Massanari*, 22 Fed. Appx. 311 (4th Cir. 2001).

---

[8] The burden is on a claimant to establish at step two that she suffered from one or more *severe* impairments and to establish at step four the extent of her functional limitations due to her impairments prior to the expiration of her insured status.  Having failed to meet these evidentiary burdens, the ALJ nevertheless gave her the benefit of the doubt, made the requisite narrative discussion of her symptoms, and assessed the plaintiff's RFC on the basis of the entire case record.  *See* 20 C.F.R. § 404.1545(a)(1)-(3); SSR 96.8p.

Moreover, contrary to plaintiff's argument that the ALJ was required utilize the services of a medical advisor in order to determine properly the onset date of a claimant's disability, such an obligation arises only "after the claimant had proved that his condition is disabling." *Bird v. Comm'r of Soc. Sec.*, 699 F.3$^d$ 337, 344 (4th Cir. 2012). In contrast, in the case now before the court the ALJ determined that the plaintiff had failed to prove that she was disabled. (R. 19-27). Furthermore, this argument ignores the SSR 83-20 directive that "[t]he medical evidence serves as the primary element in the onset determination." In short, this argument by the plaintiff is not applicable to the facts of this case.

### VII. PROPOSED FINDINGS

As supplemented by the above summary and analysis and the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. All facets of the Commissioner's final decision are supported by substantial evidence;

2. The ALJ's decision to deny Dr. Theresa Miller's opinion controlling weight is supported by substantial decision;

3. The ALJ's determination that the plaintiff's impairments or combinations of impairments were not *severe* is supported by substantial evidence;

4. The ALJ's determination of the plaintiff's RFC is irrelevant because the plaintiff fails to establish her disability at a prior step;

5. The ALJ's failure to consult a medical expert regarding the plaintiff's onset date is not relevant nor is it error because the ALJ did not find the plaintiff to be disabled according to the five-step sequential process outlined by the agency;

6. The ALJ fulfilled his basic obligation to develop a full, fair and adequate record;

7. The plaintiff has not met her burden of proving her disability during the decisionally relevant period; and

8. The final decision of the Commissioner should be affirmed.

**VIII. DIRECTIONS TO CLERK**

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

**IX. NOTICE TO THE PARTIES**

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: This 25th day of November 2013.

/s/ *James G. Welsh*
United States Magistrate Judge